RAILROAD  v.  PHILLIPS.

(*Knoxville.*    November  30,  1897.)

RAILROAD.  *Not liable for injury to horse.*

No recovery can be had for injuries sustained by a horse in crossing over a railway trestle, in front of a train, where the train stopped before reaching the trestle, and the fireman tried to drive the horse from the track, but it ran over the trestle instead.

Cases cited: Holder *v.* Railroad, 11 Lea, 176; Richardson *v.* Duncan, 2 Heis., 220; Lyons v. Stills, 97 Tenn., 514; Fink *v.* Evans, 95 Tenn., 413.

FROM  JAMES.

Appeal in error from Circuit Court of James County.   J. G. PARKS, J.

TRAYNOR & SMITH and JOUROLMON, WELCKER & HUDSON for Railroad.

J. P. PARKER for Phillips.

WILKES, J.   Phillips sued the railway company because his mare was injured.   On the trial in the Court below the cause was heard before the Court without a jury upon an agreed statement of facts, and a judgment was rendered for $30.   From the agreed statement of facts it appears that the track of the company passes through a field where the

Railroad v. Phillips.

mare was. She came upon it when a freight train was approaching, on a down grade. Instead of crossing the track, as she had the opportunity to do, the animal ran down the track in front of the engine. The whistle was sounded, the bell was rung, and the brakes were applied. The mare continued on the track, out of the field into a woodland, and came to an open bridge or trestle crossing a creek. This bridge was not floored, and was constructed of stringers and crossties and track. When the mare reached this trestle she stopped, but remained on the track, which was at that point on an embankment some six feet high. The engine and train had already stopped 120 yards distant, and was awaiting the pleasure and future movements of the mare. It was a through train, and counsel informs us was engaged in interstate commerce. It became necessary therefore to devise some means by which the train could run over the bridge without, at the same time, running over the mare. The fireman, in order to solve the difficulty, left his engine, and walked down the road, on the side of the track, outside the crossties, towards the mare, hoping to persuade or compel her to leave the track, and allow the train to proceed. When he approached near to her, she ran over the bridge, stepping sometimes on the ties and sometimes on the vacant spaces between them. She made the passage, and still continued on the track until she came to another bridge, where she again stopped, in a hesitating manner. The

fireman then made a circuit around the animal, and by some means succeeded in getting her off the track, and the train proceeded.

It is agreed that, in crossing the bridge, the mare was injured to the extent of $30. It is also agreed that the railroad used all the statutory precautions, and plaintiff states that he makes no claim for damages because the track was not fenced. This is the case as presented by the agreed statement of facts, but when we examine the briefs of attorneys we find much that is not in the record. The learned counsel for the railroad company contends that the mare inflicted the injuries upon herself, and that they were not caused by the railroad. He insists that the proximate cause of the injury was the determination of the mare to cross the bridge, when she might much more readily have gone down the six-foot embankment, and been safe; that she was guilty of the grossest contributory negligence, in her efforts to cross the bridge, in stepping on the vacant spaces between the ties, and not on the ties themselves. It is insisted that the railroad did all it could to prevent injury; that the fireman approached the animal in a quiet, peaceable, undemonstrative manner, and with the best of intentions; that it was in January, the weather was cold, and the fireman could not be expected to wade the creek in order to get around the animal, and prevent her from crossing the trestle; and, besides, such a proceeding would have caused delay, interfered with the commerce be-

Railroad v. Phillips.

tween the States, and exposed the train to be run into front or rear, or both, by other trains.

It is argued that common observation teaches that a horse will not cross an open trestle, and that an elephant will not cross a bridge even when it is floored, and, the horse being the most intelligent of the dumb animals, the fireman had a right to presume it would leave the track down the embankment, instead of attempting a trapeze performance in midair. It is also said by counsel, as an evidence of the fireman's good faith, that when he saw the animal cross the first trestle, and come to the second and hesitate, that he then went entirely around her and enjoined her from going over the second one, and it is insisted that government by injunction in such a case is legitimate and proper.

The counsel for the plaintiff insists, however, that the fireman knew that the general course of the mare was along the track, and that she was frightened, and common sense dictated that he should get off the track and go around the animal, instead of following on behind her. Counsel say that they do not insist that the fireman should have waded the creek to get around the mare, but he should have gotten out to one side and "shooed" her off the bank, like a woman shoos her chickens out of the flower bed. It is argued by the counsel for the plaintiff that when the mare stopped at the trestle and hesitated to cross it, she showed good horse sense; and if the fireman had shown as much sense

as the mare, the accident would not have happened. Counsel also insist that if plaintiff's elephant had been situated as this mare was, with a freight train loaded with the commerce of nations and observing all statutory precautions, coming down upon it, it would have taken the bridge crossing, as the mare did, instead of the cold waters of the creek.   How this is we cannot tell.

Counsel for the railroad company cite the Court to the case of *Holder* v. *Railroad*, 11 Lea, 176, as controlling in this case.   In that case a mule jumped on the track in front of an approaching train.   The whistle was sounded, the bell rung, the mule ran along the track in front of the train until it reached a trestle, jumped off, and was killed.   The train, in the meantime, had been stopped.   The Court held the railroad not liable, as the train did not strike the mule, but it killed itself by jumping from fright and also from the bridge.   The consideration of this case has given the Court much concern.   It has been before the Court in consultation more than once, besides being very exhaustively argued at the bar.   It is earnestly impressed upon us that the case in 11 Lea is not controlling, and that it must be distinguished from this case on several grounds. It is insisted that the first difference in the two cases is that in that case it was a mule, and in the present case it is a mare.   But this does not seem to us to present a satisfactory ground of distinction, inasmuch as the mare and mule are bound

quite closely by ties of consanguinity. In addition, we are confronted with the case of *Richardson* v. *Duncan*, 2 Heis., 220, in which this Court, after mature deliberation, held that a mule's sire is a horse in the eye of the law, whatever may be the facts. The next difference in the cases is that in this case the mare attempted to cross the stream by stepping on the open spaces between the ties, while in the Holder case the mule tried to jump over the stream, bridge and all. In that case the mule was killed; in this, the mare went over, somewhat disfigured, but still on the track, and ready for another trestle. In that case, the plaintiff got no verdict; in this one he did. These appear to be the only features of difference that counsel have been able to point out, and they are not entirely satisfactory to the Court.

The Court finds it very difficult to explain the conduct of this mare. When the train was chasing her down the track with whistle and bell, and engine and cars, she stopped at the bridge, and refused to cross, but when the fireman drew near she ran across the first trestle, and was ready to try the second one, if necessary. It is not shown there was anything unusual in the appearance of the fireman. Possibly he had on his black clothes, and his face may have been covered with smoke, but this does not appear in the record, and it does not appear that he made any demonstrations or noise or struck any unusual attitudes that would so frighten

this animal as to make her cross the bridge, which she refused to do before a locomotive. Perversity and a disposition to have their own way seem to be a peculiarity of East Tennessee animals. It is only a short time since this Court had to pass upon the case of a Texas pony that committed suicide. In that case, since the animal had been transferred from the plains of Texas to the mountains of East Tennessee, and had not become acclimated, the suicide could be easily explained. *Lyons* v. *Stills*, 13 Pickle, 514.

In another case, two hounds in a fox chase in McMinn County disputed the right of way with an approaching train over the tracks of this same railroad. The consequence was that one was immediately transferred to the happy hunting grounds, where there are no railroads or other corporations, as they have no souls and consequently no hereafter. The other was not killed, but was immediately converted into a thoroughly trained dog. *Fink* v. *Evans*, 11 Pickle, 413.

But while this perverse disposition seems to exist in the animals of East Tennessee, it is not shown that this fireman knew of it, and, being on a through train, the presumption is that he did not know of these local peculiarities. Counsel for plaintiff says that any farmer knows that it is negligence, pure and simple, to approach a mule or frightened horse without soft words and kindly, outstretched hands. The distinction here made between a mule and horse

Railroad *v.* Phillips.

is well taken—that is, that it is dangerous to approach a frightened horse, but dangerous to approach a mule whether he is frightened or not. This Court judicially knows this to be a fact, and it is agreed the fireman ought to have known as much as this Court—about horses and mules.

Upon the whole case the Court is of opinion that, inasmuch as the mare has recovered, the plaintiff ought not to recover; that the fireman did as much as could be required, and no negligence is shown.

The judgment must be reversed, and cause dismissed at plaintiff's cost.